**192**

DISTRICT OF COLUMBIA, for the Use and Benefit of JAMES McHUGH CONSTRUCTION CO., and Thomsson Steel Co., Inc., Plaintiffs,

and

Noland Company, Inc., Intervenor,

v.

The B. F. RODNEY COMPANY, and Hartford Accident & Indemnity Company, Defendants.

Civ. A. Nos. 2353-61, 2949-61.

United States District Court
District of Columbia.

June 25, 1963.

Alexander M. Heron, Edgar T. Bellinger, Pope, Ballard & Loos, Washington, D. C., for intervenor.

Walter J. Bonner, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This is an action against a contractor and the contractor's surety brought on the contractor's bond pursuant to Title 1, Section 804 of the District of Columbia Code, which authorizes suits in the name of the District of Columbia for the use and benefit of laborers and materialmen under contracts with the District of Columbia for the construction of any public building or public work. A number of laborers and materialmen filed claims, all but one of which have been settled or otherwise disposed of.

Defendants have moved for summary judgment against the remaining materialman, Noland Co., Inc., on the ground that Noland's intervention came too late and is barred by the statute of limitations set out in section 1–804 of the D.C. Code.

The statute gives the District of Columbia six months "from the completion and final settlement" of the main contract to bring an action in its own name. If no such suit is brought within that time period,

"then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the District of Columbia that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the District of

Columbia in the United States District Court for the District of Columbia, irrespective of the amount in controversy in such suit, and not elsewhere for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: *Provided,* That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and *shall be commenced within one year after the performance and final settlement of said contract, and not later * * *.*" § 1–804, D.C.C. (Emphasis added.)

The sole issue raised in the motion of defendants for summary judgment is whether the motion of Noland Co. to intervene, filed on October 20, 1961 (and granted by the court on October 31, 1961), came "within one year after the performance and final settlement" of the contract between the defendant B. F. Rodney Co. and the District of Columbia. Defendants concede that for purposes of the statute of limitations, October 20, 1961, is the date on which plaintiff-intervenor commenced its action.

The dispute depends upon whether the statute of limitations began to run on September 9, 1960, at which time the Director of the Department of Buildings and Grounds of the District of Columbia "accepted" all the work performed under the contract, or on January 21, 1961, when the same public official "approved" the final voucher for payments owing to the contractor. If September 9, 1960, is the appropriate date under the statute, then defendants' motion for summary judgment must be granted. If January 21, 1961, is the proper date under the statute, then defendants' motion must be denied.

The duties of James A. Blaser, Director of the Department of Buildings and Grounds, at all times relevant to this motion, are set forth in an affidavit. In his position,

"he determines, authorizes and signs all awards of contracts within his Department subject to approval of the contracts by the Board of Commissioners[;] * * * he finally determines, authorizes and signs all notices to proceed on said contracts[;] * * * he finally determines, authorizes and signs all final acceptances under said contracts[;] * * * he finally determines, authorizes and signs all final payments under said contracts."

On December 14, 1960, Blaser wrote the following letter to defendant B. F. Rodney Co.:

"Re: Contract No. 18652
        Construction of Tenley-
           Friendship Branch Library

"Subj: Final Acceptance

"Gentlemen:

"All work performed under the referenced contract having been duly inspected and found to have been completed is hereby accepted as of September 9, 1960.

"Appropriate action is being taken to expedite final payment for the work performed."

In an affidavit prepared for this case, Blaser says that this letter is evidence that "it was determined by him * * * that the contract was performed, completed and accepted, on September 9, 1960, and that, so far as the Department of Buildings and Grounds was concerned, final payment under the contract was due."

On January 11, 1961, the Department of Buildings and Grounds prepared a "voucher for miscellaneous payments" which is marked "final." This "voucher" indicates the final amount owing to defendant B. F. Rodney Co. under the contract. It indicates the amounts previously paid, the amounts owing, and certain "change orders," at least four of which are dated in the months of December, 1960, and January, 1961. This "final voucher" was signed by the vice-president of B. F. Rodney Co. on January 19, 1961, on which date he also exe-

cuted a final release. On January 21, 1961, Blaser "approved" the final voucher as the "Director of Buildings and Grounds" and "Contracting Officer." On January 31, 1961, the voucher was paid by check. In another affidavit prepared for this case, Blaser says that this "voucher for miscellaneous payments" is "the final voucher in connection with settlement of the obligations of the District of Columbia to B. F. Rodney Company on Contract No. 18652 for construction of the Tenley-Friendship Branch of the District of Columbia Library." He says further that it was prepared in the Budget Branch of the Department of which he is Director.

Under the clear language of § 1–804, D.C.Code, one of the dates in January, 1961, is the date of "final settlement," and because any one of these dates makes the plaintiff-intervenor's claim fall well within the permissible period, the Court need not decide which is the exact date of "final settlement." It is arguable that September 9, 1960, is the date of final "performance" of the contract, although it should be observed that notification of such performance was contained in a letter dated as late as December 14, 1960. Assuming *arguendo*, however, that September 9, 1960, is the date of final "performance," the statute requires both "performance" *and* "final settlement" to have taken place before the statute of limitations begins to run. "Final settlement" is a term which clearly applies not to the actual completion of the work, but to the determination of the amount of money finally owing.

Defendants argue that United States Casualty Co. v. District of Columbia, etc., 71 App.D.C. 92, 107 F.2d 652 (1939), is to the contrary, and requires the Court to adopt September 9, 1960, as the date of "performance and final settlement." That case, however, stands for the proposition that neither the date of approval of the work nor the date of actual final payment by an accounting office is the date of "final settlement." Instead, in that case, the date of "final settlement" was held to be the date on which the head of the department most directly concerned with the work approved and signed a voucher which was intended to be a final account of money owed. 71 App.D.C. at 101, 107 F.2d at 660. The principle stated in that case is that the date of "final settlement" is the date on which the Government arrives at "a fairly definite and ascertainable decision concerning the amount the Government finds with reasonable finality to be due on the entire transaction." The court continued:

"The determination, therefore, which is intended and controlling has the following characteristics in the usual case: it is one made by the administrative officer or department having charge of the work, not generally by the purely financial division of the Government; it is made in accordance with established administrative routine, if such exists in relation to the particular matter; usually it is recorded in like accordance with routine; it is a determination both that the work has been completed and that a liquidated sum is due in final payment of all claims under the contract * * *. The settlement which is held 'final' for fixing the periods of limitation is a settlement of the entire contract and of all substantial claims arising under it and its performance. * * * The settlement involves an administrative statement of account, including all charges and credits deemed allowable by the department, after deciding, with intended finality so far as its functions are concerned, such matters as the sufficiency of performance, allowance of liquidated damages, contingent liabilities, etc." 71 App.D.C. at 99–100, 107 F.2d at 659–660. (Footnotes omitted.)

Under the clear language of the statute and the clear principles enunciated in the above case, one of the dates in January, 1961, when a definite financial amount was stated for the first and final time, is the only one which could be considered the date of "final settlement." The defendants' motion must therefore be denied.